IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


LISA BECK et al.                    *
                                    *
v.                                  *
                                    *    Civil Action No. WMN-10-2765
UNITED STATES OF AMERICA            *
                                    *
   *    *    *    *    *    *    *   *    *    *    *    *    *    *    *
                                    *
FEDEX TRADE NETWORKS, INC.          *
                                    *
v.                                  *
                                    *    Civil Action No. WMN-11-890
UNITED STATES OF AMERICA            *
                                    *
   *    *    *    *    *    *    *   *    *    *    *    *    *    *    *
                                    *
UNITED STATES OF AMERICA            *
                                    *
v.                                  *
                                    *    Civil Action No. WMN-12-636
$386,608.50 IN THE CUSTODY OF       *
THE SECRET SERVICE (BECK)           *
et al.                              *
                                    *
   *    *    *    *    *    *    *   *    *    *    *    *    *    *    *


**<u>MEMORANDUM</u>**

Currently pending is a motion for summary judgment filed by
FedEx Trade Networks, Inc. (FedEx) in Civil No. WMN-11-890 and a
motion to consolidate filed in each of the above captioned
actions.  ECF No. 31 in Civil No. WMN-10-2765, ECF No. 56 in
Civil No. WMN-11-890, and ECF No. 10 in Civil No. WMN-12-636.
Upon review of the pleadings and the applicable case law, the
Court determines that no hearing is necessary, Local Rule 105.6,

and that FedEx's motion for summary judgment in Civil Action No. WMN-11-890 will be denied and the motion to consolidate these three actions will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

These three cases all arise out of the alleged fraudulent conduct of Jonathan Beck and subsequent seizure of funds from various financial accounts associated with Mr. Beck.  Mr. Beck was employed by FedEx during the years 2001 to 2009.  During that time, FedEx alleges that Mr. Beck defrauded FedEx of over $850,000.00 by creating a fictitious vendor to which he directed vendor checks using his position as a manager.  After an investigation of Mr. Beck's alleged fraudulent activities, the Secret Service seized $386,608.50 (the Subject Property) from four different financial accounts.  Mr. Beck was the sole owner on three of those accounts and his wife, Lisa Beck, was the named account holder on the fourth, a College Investment Plan Account with assets of $3,113.88.  The government seized these accounts after concluding that there was probable cause to believe that the funds were traceable to Mr. Beck's fraudulent scheme.

Mr. Beck committed suicide shortly after the funds were seized.  His then ex-wife, Lisa Beck, was appointed personal representative of his estate.  Under Mr. Beck's will, Lisa Beck

was the primary beneficiary of the estate and his adult son,
Zachary Beck, and minor son, M.B, were potential beneficiaries.

On October 29, 2009, the Secret Service sent notice to the
Becks and to FedEx regarding the seizures and inviting them to
submit claims of ownership.  On November 20, 2009, FedEx
submitted a Petition for Remission of the Subject Property.  On
December 1, 2009, Ms. Beck sent a letter to the Secret Service
asserting a Claim of Ownership to the Subject Property.

For reasons more fully explained in this Court's memorandum
of March 10, 2011, in Civil No. WMN-10-2765, the Secret Service
erroneously determined that Ms. Beck's Claim was untimely and,
consistent with that determination, treated her claim as a
Petition for Remission.  Based upon its determination that no
Claim of Ownership had been filed, the Secret Service issued
proclamations of forfeiture providing that the Subject Property
was forfeited to the United States.  On September 2, 2010, the
Secret Service denied what it had deemed the Petition for
Remission filed by the Becks, concluding that they had failed to
demonstrate any lawful interest in the Subject Property.

On September 9, 2010, the Secret Service granted the
Petition for Remission filed by FedEx stating that its
investigation demonstrated that FedEx was a victim of the
offenses that gave rise to these forfeitures and had satisfied
the remaining criteria for remission.  The Secret Service agreed

3

to remit the seized funds to FedEx (minus administrative costs)
provided that FedEx would execute a "Release and Hold Harmless
Agreement."   FedEx executed that agreement on September 10,
2010, in which it promised "to equally defend, hold harmless,
and indemnify" the government against "any claim, grievance,
entitlement, demand, suit, cause of action, damages or appeal
possessed by any third party" which may arise from the seizure.
See ECF No. 1-4 in Civ. No. WMN-11-890.   Despite the execution
of the agreement, the Subject Property remained in the
possession of the government.

### A. Beck v. United States, Civil No. WMN-10-2765

Shortly after learning that the Secret Service had denied
their "Petition for Remission," the Becks filed suit on October
6, 2010.   Beck v. United States, Civil No. WMN-10-2765.   In
their Complaint, they argued that their Claim was indeed timely
filed and should have been treated as a Claim.   As such, the
government was under the obligation to file a complaint for
forfeiture within 90 days of receipt of the Claim, which it
failed to do.

The government filed a motion to dismiss the Complaint in
Civil No. WMN-10-2765.   The Court denied the motion after
concluding that, without question, the Beck's claim was timely
filed with the Secret Service.   As that timely filing had
triggered the government's obligation to file a complaint for

4

forfeiture, the Court went on to discuss whether the time for

filing such a complaint should be tolled.  Clearly telegraphing

that the Court believed that it should, the Court opined:

> [w]hile the significant delay may prejudice
> Plaintiffs, tolling the deadline would still afford
> them the opportunity to dispute the merits of the
> seizure after the Government files its complaint.
> Requiring the return of the property would severely
> prejudice the Government, who could then take no
> further action regarding the financial accounts.  The
> Court notes that there is a strong preference for
> resolving disputes on the merits when possible,
> instead of determining the outcome solely on technical
> or procedural grounds.

Civ. No. WMN-10-2765, March 10, 2011, Mem. at 12 (citations and

internal quotations omitted).  Nevertheless, because the Becks

had yet to have the opportunity to address the issue of tolling,

the Court granted them leave to do so before the Court made its

final determination.  The Court also specified in its March 10,

2011, Memorandum that the actual merits of any claim that the

Becks might have to the seized funds was not relevant to the

issues then before the Court.  Id. at 3 n.2.

On March 25, 2011, FedEx moved to intervene in Civil No.

WMN-10-2765.  Before that motion became ripe or could be

addressed by the Court, the Becks filed a voluntary dismissal of

the action on March 31, 2011.  The day before, they had reached

an agreement with the government in which the government had

agreed to release roughly one half of the seized funds to the

Becks, despite the government's previous agreement to release

all of the seized funds to FedEx.  That agreement also provided, however, that the Becks would "agree to indemnify and hold the government harmless from and against all claims, damages, losses, and action resulting from or arising out of the release of [the property released to them.]"  See ECF No. 1-3 in Civ. No. WMN-12-636.

### B. FedEx v. United States, Civil No. WMN-11-890

After being unable to intervene in Civil No. WMN-10-2765, FedEx filed its own action against the United States and the Becks seeking a declaratory judgment that it was the rightful owner of the seized funds.  FedEx v. United States, Civil No. WMN-11-890.  FedEx also asserted a breach of contract claim against the United Stated based on the September 10, 2010, Agreement and also asserted a claim against the Becks for a constructive trust under 21 U.S.C. § 853(n).  The Becks moved to dismiss the claim against them on the grounds that § 853 was inapplicable in this context and, regardless, that any claim was barred by the applicable statute of limitations, Md. Code. Ann., Est. & Trusts § 8-103(a), which governs claims against the estate of a decedent.

With a two-page motion without accompanying memorandum, the United States moved to dismiss on the ground that the claim against it was a contract action and, as such, under the Tucker Act, 28 U.S.C. § 1491(a)(1), jurisdiction over the claim lies

exclusively in the United States Court of Claims.  FedEx opposed
the government's motion, arguing, <u>inter alia</u>, that its claim
against the government does not fall under the Tucker Act as it
is a claim for "monetary relief" and not for "monetary damages."
The government filed no reply to the opposition.

On October 6, 2011, this Court dismissed the claim against
the Becks, finding it barred by limitations.  In the same
memorandum and order, the Court denied the government's motion,
holding that, "[w]hile its claim may be based in part on a
breach of contract, FedEx seeks only equitable relief in the
form of the return of specific funds and not monetary damages."
ECF No. 41 at 20.

Also in that same memorandum and order, the Court granted
FedEx's motion for leave to file an amended complaint, a motion
which the government did not oppose.  As explained by FedEx, the
purpose of the amendment was primarily to remove reference to 21
U.S.C. § 853 and to re-caption the count against the Becks as
one for "Unjust Enrichment."  In the "Jurisdiction and Venue"
portion of the Amended Complaint, however, FedEx also asserted,
as the basis of jurisdiction, that "as this is a declaratory
judgment and equity action seeking to compel officers or agents
of the United States to perform a duty to FedEx, the Court has
jurisdiction under 28 U.S.C. § 1361."  Am. Compl. ¶ 4.  While
acknowledging that the amendment was inconsequential as to the

claims against the Becks since those claims were barred, the Court granted the motion to amend because it "clarifies the jurisdictional basis for the claims against the United States." ECF No. 41 at 20.

FedEx has now moved for summary judgment in Civil No. WMN-11-890.  FedEx argues that it is entitled to summary judgment on the declaratory judgment claim because it is undisputed, based upon the government's own evidence, that "each and every dollar" seized is traceable to Mr. Beck's fraudulent activity.  FedEx argues that it is also entitled to summary judgment on its contract claim because its September 10, 2010, agreement with the government remains a binding and enforceable contract.

In opposing FedEx's motion, the government argues that FedEx has failed to aver a proper jurisdictional basis for its claims and, accordingly, the action should be dismissed.  The government, however, did not file a motion to dismiss.  The government also argued that, because FedEx's motion is predicated on "facts which were undone by the Court's ruling" in Civil No. 10-2765, the motion should be denied.  In the alternative, the government contends that it needs limited discovery before it can oppose FedEx's motion.

### C. United States v. $386,608.50, Civ. No. WMN-12-636

Shortly after the completion of the briefing on the summary judgment motion in Civil No. WMN-11-890, the United States filed

its own action seeking a formal order of forfeiture of the
Subject Property.  United States v. $386,608.50, Civ. No. WMN-
12-636.  As an alternative to its forfeiture claim, the United
States asks that the Court assume jurisdiction over the Subject
Property in interpleader and adjudicate its proper owner(s) and
quiet title.  Compl. Count II.  The Complaint in Civil No. WMN-
12-636 also includes declaratory judgment claims related to the
settlement agreement and indemnification agreement between the
government and the Becks (Counts III and IV) and the Hold
Harmless Agreement between the government and FedEx (Counts V
and VI).

Shortly after filing this action, the United States moved
to consolidate these three actions.  The Becks have filed an
opposition to the motion to consolidate but it is questionable
whether that opposition was timely.[1]

## II. DISCUSSION

### A. Motion for Summary Judgment in FedEx v. United States, Civil No. WMN-11-890

Before reaching the merits of FedEx's summary judgment
motion, the Court must consider its subject matter jurisdiction
over FedEx's claim against the United States.  Although, as

---

[1] The Becks were served with the Summons and Complaint on March
3, 2012.  The Motion to Consolidate was filed on March 12, 2012.
The Becks' opposition to that motion was not filed until April
12, 2012.

noted, the government has not filed a motion to dismiss for lack of jurisdiction, it does raise the issue in its opposition. Regardless of absence of a motion to dismiss, the court has an independent duty to satisfy itself of its own subject matter jurisdiction and may raise the issue sua sponte, even where the defendant does not directly challenge it.  Andrus v. Charlestone Stone Prods. Co., Inc., 436 U.S. 604, 608 n.6 (1978).

FedEx takes the position that this Court's previous decision on the motion to dismiss and motion for leave to file an amended complaint was fully determinative of the issue of jurisdiction.  Based upon FedEx's representation that it was only seeking equitable relief in the form of the return of specific funds and not monetary damages, the Court held that, under Bowen v. Massachusetts, 487 U.S. 879 (1988), jurisdiction could lie in this Court.  The Court also allowed FedEx to amend the complaint to clarify that the basis for this Court's jurisdiction over its claim was 28 U.S.C. § 1361.[2]

---

[2] FedEx's Amended Complaint also alleged subject matter jurisdiction pursuant to 28 U.S.C §§ 1332 and 2201.  Section 1332, which relates to diversity jurisdiction, was relevant to the claims against the Becks, but not to the claims against the United States.  See Jizmerjian v. Dept. of the Air Force, 457 F. Supp. 820, 822 (D.S.C. 1978) (holding that jurisdiction based on diversity is improper in an action against the United States). Section 2201, the Declaratory Judgment Act, does not serve as an independent basis for federal subject-matter jurisdiction but can only provide a remedy where jurisdiction already exists. Skelly Oil Co. v. Phillips Co., 339 U.S. 667, 671-72 (1950).

Section 1361 provides that the "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Mandamus Act, however, requires that the United States owe a clear, nondiscretionary duty to the plaintiff. Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988). To demonstrate a clear, nondiscretionary duty, a plaintiff must show: 1) that he has a clear legal right to the relief sought; 2) that the respondent has a clear legal duty to do the particular act requested; and 3) that no other adequate remedy is available. Asare v. Ferro, 999 F. Supp. 657, 659 (D. Md. 1998). The duty of the officer must be ministerial and so plainly prescribed as to be free from doubt. See Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994).

The current record does not support such a "clear, nondiscretionary duty." While FedEx represents that the agent that investigated Mr. Beck's fraudulent activities, Secret Service Agent Ashley Moore, concluded that "each and every dollar that was seized is directly traceable to fraud by Mr. Beck," ECF No. 54 in Civ. No. WMN-11-890, that is not entirely accurate. Agent Moore stated in his affidavit that, based upon his investigation, he had "probable cause to believe that" the Subject Property was the proceeds from Mr. Beck's fraudulent

11

scheme.   ECF No. 54-3, ¶ 3.   Elsewhere in his affidavit he qualified his attribution of the Subject Property to the fraudulent activities, stating that one account "was funded largely" and another "almost entirely" with funds directly traceable to the fraud.   Id. ¶ 17 (emphasis added).

Furthermore, the contract aspect of FedEx' claim is rendered less than clear by the indemnity provision.   FedEx notes that, unlike the Becks who entered into their settlement agreement with the government fully aware of FedEx's claim to the same Subject Property, FedEx was aware of no competing claims when it entered its agreement with the government.   See ECF No. 44-1 in Civ. No. 11-890, n.2.   Nevertheless, FedEx signed a Release and Hold Harmless Agreement in which it agreed to indemnify the government "against any claim . . .  which may arise in any way from the operative facts, events, decisions, actions, or administrative process relating to, directly or indirectly, the seizure, custody, control, storage, forfeiture, or release, or distribution of [the Subject Property]."   ECF No. 1-4 in Civ. No. 11-890.   Whatever the merits or lack of merits of the Beck's claims, those claims potentially fall within that indemnity provision.

The Court also notes that when FedEx was opposing the government's motion to dismiss, it stated that it "does not seek money damages in this case [but, i]nstead . . . the return of

specific and identifiable in rem property."  ECF No. 39-1 at 14;

see also id. at 15 ("Even FedEx's contract claim seeks an

equitable remedy in that FedEx merely seeks the return of

specific, identifiable funds").  In briefing the summary

judgment motion, however, FedEx appears to have extended the

reach of its contract claim, seeking "damages" and not just the

return of the Subject Property.  ECF No. 44-1 at 16 ("FedEx is

entitled to damages for that breach because FedEx had to bring

this action to enforce the contract and the underlying award").

To the extent that FedEx is seeking money damages beyond the

simple return of the Subject Property, it is not clear that this

Court would have jurisdiction over its contract claim.[3]

Furthermore, even should this Court have jurisdiction over

any of FedEx's claims against the government, FedEx would not be

entitled to summary judgment for many of the same reasons.[4]  The

evidence on which FedEx relies establishes only that there was

probable cause to believe that all of the Subject Property was

traceable to Mr. Beck's fraudulent activities.  It does not

---

[3] The Court is aware that FedEx is also seeking to recover the
attorney fees expended in these actions pursuant to 28 U.S.C. §
2465, which permits the award of reasonable attorney fees and
litigation costs to a claimant that "substantially prevails" in
a civil forfeiture action.

[4] Because FedEx's entitlement to the Subject Property can be
fully litigated in the action filed by the government, it is not
necessary, at this juncture, to resolve the jurisdictional
issues raised in Civil Action No. WMN-11-890.

support the conclusion, as a matter of law, that FedEx is
entitled to each and every dollar of the Subject Property.
Furthermore, as noted above, FedEx's contract claim is clouded
by the indemnity provision.  Accordingly, FedEx's motion for
summary judgment will be denied.

### B. Motion to Consolidate

In its motion to consolidate, the government argues that
only in its forfeiture and declaratory judgment action, Civ. No.
WMN-12-636, can all of the competing claims of the Becks and
FedEx to the Subject Property be equitably resolved.  Also, only
in this action can the competing agreements entered into by the
government to distribute some of the same property - agreements
which both include indemnity provisions - be reconciled.  The
Becks have opposed consolidation, arguing that they would be
unfairly prejudiced by any delay in their recovery under the
terms of their settlement agreement with the government.  Their
argument, however, completely ignores their indemnity
obligations under that agreement and the Court's clear
indication regarding the likelihood of tolling the time by which
the government had to bring the forfeiture action.

The Court will grant the motion to consolidate in order to
facilitate the final and equitable resolution of this dispute
and the distribution of the Subject Property.  Hopefully, the
Parties will not seize on this consolidation as the opportunity

to initiate a new round of motions practice or procedural jockeying.  Although not definitive, the evidence points very strongly to the conclusion that FedEx is entitled to the lion's share of the Subject Property.  While the Becks may be able to establish a legal right to some small portion of the property, a minimal amount of additional discovery should be able to determine what amount that might be, if any.

In order that a path to an expeditious resolution of this dispute might be charted, a telephonic scheduling conference will be held on April 26, 2012, at 10:30, to be initiated by counsel for the United States.  Prior to that conference, the parties should confer and, if possible, come prepared with a joint proposal as to how best to proceed in these cases.

A separate order consistent with this memorandum will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: April 12, 2012.